## THE PARA.

### McNEIL v. THE PARA.

#### (District Court, E. D. Louisiana. May 22, 1893.)

#### No. 12,785.

1. SHIPPING—NEGLIGENCE—DEFECTIVE APPARATUS—INJURY TO STEVEDORE.

A ship is liable in damages to a stevedore's employe who is injured through the insufficiency of the tackle provided by the ship for hoisting cargo.

2. SAME—DAMAGES.

Through the insufficiency of tackle provided by a ship, a stevedore's employe sustained a fracture of the skull and collar bone, rendering necessary two trepanning operations. His health and ability to earn a livelihood were permanently impaired, and at the time of the trial paralysis was impending. He was about 30 years old, and had been accustomed to earn $18 a week. *Held,* that the court would award him $5,000.

In Admiralty. Libel by Hugh McNeil against the steamship Para to recover damages for personal injuries. Decree for libelant.

H. L. Lazarus and Lionel Adams, for libelant.

J. McConnell, for claimant.

BILLINGS, District Judge. This is a suit in admiralty, brought by an employe of a stevedore, who was unloading the Para at the port of New Orleans, for injuries suffered by him through the defect in the tackle used in the unloading. The pleadings are as follows: The averments of the libel, in substance, are that while libelant, on the 3d of July, 1890, was engaged in unloading the Para, and was in charge of the lever and brake controlling the winch used in such unloading, the shackle and attachment holding the block or lower pulley broke loose from its fastenings, striking libelant, causing a deep fracture of the skull and collar bone, etc., and avers that these injuries so sustained were caused by the neglect and carelessness of the steamship Para and the officers in charge, and claims damages in the nature of compensation in the sum of $10,000. Claimants deny these averments, and aver that the injuries sustained by libelant were solely caused by the neglect and carelessness of libelant and his employer, the stevedore, who was unloading the Para, by reason of the unskillful and improper manner in which these necessary attachments used for the purpose of unloading were rigged. The testimony is voluminous, but I shall find it necessary to notice at length but few of the depositions which are in the record.

The facts about which there is no controversy are that the libelant was seriously injured by the block connected with the hoist striking him upon his head and fracturing his skull. The block was loosened by the giving way of the shackle connected with the mast. On the starboard side was rigged a guy line, the object of which was to cause the boom to swing to shore. This guy line

was placed by the stevedore. The Para was being unloaded, and the business of unloading was in the hands of Beattie, the stevedore, in whose employ the libelant was. He was engaged at the winch. The shackle has been produced in court, and I have studiously examined it. It is so large and so well made that I think it would have been impossible for the guy line to have wrenched it so that the pin would have come out, although the block flew towards the starboard side. The strength of the shackle is so enormous that the whole weight which was being hoisted could not have so distorted it out of shape. It has the appearance of having been by some previous strain or stress or by a succession of strains, distorted through some very great weight, and that the end and one of the sockets had been by some great weight—far greater than the 800 pounds which was being hoisted at the time of the accident to libelant—so twisted away from the screw end of the pin that any weight, even a small one, could have pulled the pin out, and thus loosened the block which flew and hit the libelant. The inspection of the shackle forces upon me the conclusion that the accident happened substantially because a very strong shackle—one much stronger than was sufficient to effect the hoisting which was being done upon the Para —had been allowed to become at one of its ends so bent outward that the screw end of the pin which held it to the iron band encircling the mast did not and could not enter the female screw which it was designed to have fitted and been screwed into. The shackle needed to have the pin held firmly in both its ends, in one by its head, and in the other by a screw, and possibly a nut; but the shackle itself shows that the screw end of the pin could not be made to come within an inch of the screw into which it should have been firmly fitted.

The strength of the shackle, which some of the witnesses testify could easily have borne the weight of three or four tons, and its distortion or wrenched condition, satisfies me that it was in this condition when Jackson, the derrick's man, called the attention of the chief mate to it. He says: "I told him, 'It looks like that bolt is drawing out.' The pin didn't go through that shackle. I told him it looked like the bolt was drawing out. It didn't go through the end of the shackle." Richard Joseph corroborates this testimony. He says: "At four o'clock my attention was called to the shackle by the port warden. He said, 'If you don't look after winch No. 2, you will have it soon stopped.'" Albert Dennet, who was the foreman of Beattie, the stevedore, after saying that the crew put up the shackle, says: "The only thing I know about it is that the pin of the shackle didn't go half way through the shackle." This testimony seems to strongly corroborate the impression which comes from the appearance of the shackle as exhibited. I think, therefore, that the shackle was in an unsafe condition at the time of the accident, and that its unsafe character was evident. The ship was bound to furnish tackle reasonably safe. Having failed to do so, she is liable.

As to the amount of damages. The injury is serious; two trepanning operations have been necessary, and paralysis is impending. The libelant is about 30 years old. His health and ability to earn a livelihood are permanently impaired. He had been accustomed to earn $18 per week. My opinion is there should be a judgment for the libelant for $5,000, with interest from judicial demand.