# Gaynor, Admrx. *v.* Louisville & Nashville Railroad Co.

*Action by Administratrix against Railroad Company to recover Damages for alleged negligent Killing of Plaintiff's Intestate.*

1. *Trial and its incidents; negligence; erroneous for court to charge upon effect of the evidence ex mero motu.*—In an action by an administratrix to recover damages for the alleged negligent killing of plaintiff's intestate, where the defendant pleaded contributory negligence of plaintiff's intestate, and there was evidence supporting such defense, it is error for the court to instruct the jury *ex mero motu* without the hypothesis of the jury's believing the evidence, that the evidence shows that the plaintiff's intestate was guilty of contributory negligence, and that, therefore, the plaintiff could not recover under the counts which charged simple negligence; such instruction being a charge upon the effect of the testimony and being given without the request of either party, in violation of the statute (Code, § 2336). The error in the court's giving such instruction is not removed or rendered harmless by reason of the fact that subsequently at the request of the defendant the court gave the general affirmative charge with hypothesis against those counts of the complaint which claimed damages for simple negligence.

2. *Negligence; when contributory negligence shown; charges in reference thereto.*—In an action by an administratrix against a railroad company to recover damages for the alleged negligent killing of the plaintiff's intestate, where the defendant pleaded contributory negligence on the part of the intestate, and the evidence showed that the intestate was killed by being run over by a car on the defendant's road while he was attempting to cross the track, and there was testimony tending to show that the intestate was guilty of negligence in going on the track where he was run over, without looking and listening for the approaching trains; that the employees

[Gaynor, Admrx. v. Louisville & Nashville Railroad Co.]

of the defendant did not become aware of his peril in time to have avoided injuring him, and were not guilty of negligence in not acquainting themselves with his position sooner, and that without such negligence on his part the accident would not have occurred, such testimony shows that the intestate's own negligence was the proximate contributing cause of the injury suffered by him; and the charges which instruct the jury that if they believe the evidence in the case they should find for the defendant under the counts of the complaint charging simple negligence, are free from error and properly given at the request of the defendant.

3. *Negligence; wantonness; charges in reference thereto.*—In an action by an administratrix against a railroad company to recover damages for the killing of the plaintiff's intestate, who was run over by defendant's train while attempting to cross one of its tracks, where some of the counts charge wantonness on the part of the defendant's employes, and the only testimony tending to support such count was that of one or two witnesses who testified to the very rapid movement of the train over the street at the crossing where the accident occurred, and there was much other testimony to the effect that the speed of the train over the crossing was at the rate of about four miles an hour, charges which instruct the jury that if they believe from the evidence that said train was being run at the speed of about four miles an hour, they should find a verdict for the defendant under said counts, are free from error and should have been given.

4. *Same; same; same.*—In such a case, charges which instruct the jury that if they believe from the evidence that the defendant's servants were not guilty of wantonness or reckless indifference to probable or even possible disastrous consequences in the operation of the engine and cars over the street at the time of the infliction of the injuries upon plaintiff's intestate, they should find for the defendant, are free from error and properly given at the request of the defendant.

5. *Evidence; when rulings upon evidence without injury.*—Where in the trial of a cause there were many exceptions reserved by the plaintiff who was cast in the suit, and the rulings of the trial court on the admissibility of testimony, but on appeal it appears that if all the testimony offered by the plaintiff and rejected was allowed to go to the jury, and if all the testimony admitted against the plaintiff's objection was excluded, the cause before the jury would not be materially

different in any respect from what it is as presented by the record on appeal, such rulings upon the testimony are without prejudice to the appellant, and will not be reviewed by the Supreme Court.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. WILLIAM S. ANDERSON.

James T. Gaynor was run over and killed by one of the cars on the Louisville & Nashville Railroad Company at a crossing of a public street in the city of Mobile. This suit was brought by the appellant, Agnes Nellie Gaynor, as administratrix of the estate of James T. Gaynor, deceased, against the Louisville & Nashville Railroad Company, to recover damages for the killing of the plaintiff's intestate.

The complaint as originally filed contained 8 counts. The 6th, 7th and 8th counts were stricken from the file on motion of the plaintiff. The 1st and 3d counts of the complaint alleged that the killing was caused "by and through the carelessness, wantonness and improper conduct of said defendant or its servants or agents," in operating a train at the time and place of the killing.

The 4th and 5th counts alleged that the plaintiff's intestate was killed while crossing or attempting to cross the defendant's track, and "the defendant then and there by its servants or agents so wantonly conducted itself in and about the use, management and operation of said steam engine and train of cars as to wantonly run one of said cars with great violence upon said plaintiff's intestate," and thereby crushed him so that in consequence of said injuries he died.

To each of the counts of the complaint the defendant pleaded the general issue, and by special pleas set up the contributory negligence of the plaintiff's intestate, in that he failed to look or listen before going upon the defendant's track, and that if he had so looked or listened, he could have seen the approaching train and thereby escaped injury; and that such negligence on the plaintiff's intestate's part proximately contributed to the injuries complained of.

To each of the pleas setting up contributory negligence, the defendant demurred, upon the ground that said pleas neither traversed nor confessed and avoided the substantial allegations of the counts of the complaint, and that said pleas did not show any contributory negligence on the part of the plaintiff's intestate, which proximately contributed to the injury complained of, and that the failure of the plaintiff's intestate as set up in said pleas was not shown to have been negligence on his part which contributed to his death.    To said special pleas setting up contributory negligence, in so far as they were pleaded to the 4th and 5th counts the plaintiff demurred upon the grounds that said counts alleged that the plaintiff's death was caused by the wanton negligence of the defendant's servants or agents, and that said pleas did not set up a defense of negligence complained of.    The court overruled the demurrers to the pleas, in so far as they were pleaded to the 1st, 2d, and 3d counts of the complaint, and sustained the demurrers to said pleas, so far as they were pleaded to the 4th and 5th counts.

The cause was tried upon issue joined upon the plea of the general issue to all the counts of the complaint, and upon issue joined upon the pleas of contributory negligence as pleaded to the 1st, 2d and 3d counts of the complaint.

The undisputed evidence showed that the deceased was killed at a crossing of a public street in the city of Mobile where people were constantly crossing, and that this fact was known to the employes of the defendant in charge of the car that ran over the deceased.    There was some dispute as to exactly how the deceased came to be upon the track, at the place where he was stricken, and also as to his exact position on or near the track, but in other respects the evidence was without conflict. The deceased was killed upon a curve of a track whose general direction was southeast and northwest, but for convenience in describing it, it will be treated as running east and west, and will be so spoken of.

Just prior to the time that the deceased entered upon the track, the defendant's switch engine, drawing two

freight cars, had gone west to a point about 90 feet west of where the accident occurred. The switchman stood at a switch stand on the south side of the track until the engine and cars passed it, and then threw the switch, and crossed in front of the east end of the cars to the north side of the track; the engine backed the cars eastwardly at the rate of three or four miles an hour, and the switchman ran along the north side of the car that was furthest east, keeping within about ten feet of the east end of the front car. Another switchman stood about 200 feet northeast of the backing cars, watching the track ahead of the cars, and could see the entire track between the point where he stood and the end of the car, while the switchman that ran along with the car could see the center of the track in front of the car at a distance of about 10 feet from the east end of the car, but from his position could not see the center of the track at a point nearer to the car. The engine blew the whistle before starting and rang the bell continuously while backing.

While the switch engine and cars had stopped west of the point of accident and before it had started east, a long freight train came from the west on a track about 8 or 9 feet north of the track occupied by the switch engine and cars, and while this northern track was occupied by such freight train, the deceased, according to the version of one witness, entered, from a point south of both tracks, upon the track upon which the switch engine was either backing or about to back, without looking or listening, and was stricken by the car that was being pushed by the switch engine. According to the version of another witness, the deceased was stricken before he got across the track. According to another version, the deceased crossed the track upon which the switch engine and cars were standing, and got into the space between the two tracks, and then stepped back immediately in front of the cars being pushed by the switch engine, and was stricken. According to another version, the deceased crossed the track upon which the switch engine was, and stood just outside of the most

northern rail of this track, but so close thereto that he was stricken by the car being pushed by the switch engine immediately after he took such position. Each of the witnesses who gave these several versions placed deceased at the point of danger only an instant before he was stricken. The remaining version of the accident was given by a witness whose testimony was extremely confused and contradictory, but, construed most strongly in favor of the plaintiff, it placed the deceased upon the track before the switch engine had started to back eastwardly, and had him remain there until the cars were backed upon him, and he was stricken. Neither the engineer nor the switchman that was running by the side of the car saw the deceased until after he was stricken, but the switchman that was standing northeast of the place of the accident saw the deceased when he entered upon the track, and at once began to run towards him and hallooed at him to get off, and at the same time flagged the engine to stop, and the engine stopped almost immediately upon being flagged, but not before the car had run over the deceased. According to the version given by this switchman, the deceased entered upon the track only about 10 or 12 feet in advance of the cars. It was shown by the evidence that there was nothing to obstruct the deceased's view of the approaching engine and cars, and if he had looked before he entered upon the track he would have seen the cars, or had he kept a lookout while on the track, he would, under any version of the evidence, have known of its approach, and could easily have stepped out of the way.

The portion of the court's charge given *ex mero motu*, to the giving of which an exception was reserved by the plaintiff, is copied in the opinion.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury, among others, the following written charges and separately excepted to the court's refusal to give each of them as asked: (1.) "I charge you, gentlemen of the jury, that if you believe the evidence, you should find a verdict for the plaintiff, but the amount of your verdict I leave to you." (4.) "Contributory negligence which is available to a defend-

aut as a defense is not every negligence on the part of the plaintiff which may have had some part in plaintiff's injury. The contributory negligence which is so available as a defense is the want of that kind of care which is called ordinary care, and ordinary care is that care which persons of ordinary care and prudence (not extraordinarily careful and prudent persons) ordinarily take in the given circumstances or in like circumstances; but ordinary care, like reasonable care varies in the degree of care with the care the circumstances require reasonably." (5.) "I charge you that every negligence of a plaintiff or of a plaintiff's intestate, is not available to a defendant as contributory negligence even though the negligence may have had some part in producing the injury sued for. To be available as a defense the negligence of the plaintiff or of plaintiff's intestate must amount to a want of ordinary care under the circumstances. A failure to use extraordinary care beyond that degree of care which ordinarily careful and prudent men ordinarily use in the given or like circumstances is not contributory negligence." (6.) "I charge you that in the absence of any evidence throwing light upon the question what care a person, subjected to sudden danger of which he was not previously aware, used to escape from it, it will be presumed that he observed that care and precaution which the law. requires and which instinct would prompt him to use to try to save his life." (7.) "When great peril comes suddenly on a person who was not previously aware of his peril, wild and injudicious acts done by him in trying to escape the peril, whereby he mistakes what is the safest means of escape from the peril, and thereby unintentionally runs into peril, are not as a general rule attributed to contributory negligence on his part." (8.) "As a general rule a person is not chargeable with contributory negligence who, when unwarned peril comes on him suddenly, acts wildly and madly." (11.) "Gentlemen of the jury, I charge you that if the jury believe from the evidence that the injury to plaintiff's intestate, James T. Gaynor, could have been prevented if the de-

fendant had been exercising the proper watchfulness of the track ahead of the car that injured him, (if he was injured by such car), immediately before the said injury was inflicted, but that defendant, its servants or agents in that behalf, neglected to exercise such watchfulness, and that said injuries were the proximate result of said neglect on their part, then the jury should find a verdict for the plaintiff, unless they believe from the evidence, that the said plaintiff's intestate, was himself, guilty of negligence which proximately contributed to said injury." (12.) "I charge you, that if you believe from the evidence that James T. Gaynor was on or near defendant's track in Commerce street, and there discovered that he was in peril from an approaching train of defendant, and was endeavoring to escape the danger, and that defendant's servants or agents in charge of or in control of the movements of said train, or who were put in that vicinity by defendant, to warn persons of danger in being where said Gaynor was, saw his peril in time to have prevented injury to him from said train by resorting promptly to all means then and there reasonably available to them for that purpose, and saw that he was not taking the necessary measures to escape the danger, and defendants said servants or agents failed to resort to said measures, then said failure of defendant's said servants or agents was negligence for which plaintiff would be entitled to recover in this case, if you believe from the evidence that said negligence of defendant's servants or agents was the proximate cause of the injury and death of said James T. Gaynor." (13.) "I charge you, gentlemen of the jury, that in order to prove that an accident was inevitable, it is not always enough to show that under the circumstances it could not then have been avoided. It must also be the fact that the defendant was not in fault in bringing about any of those circumstances for if by previous negligence, such defendant brought about peril to such plaintiff as to make it impossible for such defendant to avoid injuring such plaintiff, the defendant could not excuse himself by showing that such negligence had

brought about such circumstances as made it then impossible to prevent the injury to such plaintiff. In such cases the defendant's original negligence deprives him of the right to be excused from liability on the ground that the injury brought about and caused by such original negligence of defendant was inevitable accident." (14.) "Gentlemen of the jury, I charge you that if the defendant's servants or agents who were engaged in the operation of the car which collided with the plaintiff's intestate, and injured and killed him, if he was so injured and killed, discovered him in a perilous position on its track in time to have averted said injury by the use of the means in their power, and failed to do so, they were guilty of wanton negligence." (15.) "Gentlemen of the jury, I charge you, that if you believe from the evidence that the said James T. Gaynor was injured in the city of Mobile, and State of Alabama, on the first day of July, 1899, by being knocked down and run over by one of the cars of one of defendant's trains, and that he died in consequence thereof, on the sixth day of July, 1899, and that this injury to him was caused by the carelessness or negligence of the defendant or its servants or agents as charged in the complaint, or if you believe, from the evidence, that this injury to said Gaynor could have been foreseen and guarded against, by the exercise of ordinary care and prudence, on the part of the defendant or its said servants or employes, and that the said Gaynor was not guilty of contributory negligence, then you should find for the plaintiff."

The court, at the request of the defendant, gave to the jury, among others, the following written charges, to the giving of each of which the plaintiff separately excepted: (1.) "If the jury believe all the evidence in this case, they ought not to find a verdict for the plaintiff under the first count of the complaint." (2.) "If the jury believe all of the evidence in this case, they ought not to find a verdict for the plaintiff under the second count of the complaint." (3.) "If the jury believe all the evidence in this case, they ought not to find a verdict for

the plaintiff under the third count of the complaint."
(4.) "The court charges the jury that if the car that ran
over Gaynor was, at the time, being backed at about four
miles an hour, the jury ought to find a verdict for the
defendant." (5.) "The court charges the jury that if
the bell on the engine was ringing from the time the
switch engine started north until the accident occurred,
and that the car that ran over Gaynor was, at the time
of the accident, being backed at a speed of about four
miles an hour, they ought not to find a verdict for the
plaintiff." (6.) "The court charges the jury that if the
bell on the engine was ringing from the time the switch
engine started north until the accident occurred, and
that the car that ran over Gaynor was, at the time of the
accident, being backed at a speed of about four miles an
hour, they ought to find a verdict for the defendant."
(7.) "The court charges the jury that if they believe
from the evidence that the car that ran over Gaynor was
not being pushed faster than four miles an hour, then
they ought not to find a verdict for the plaintiff upon the
sixth count of the complaint." (9.) "The court charges
the jury that Gaynor under all the evidence in this case
was guilty of negligence which proximately contributed
to his injury, and that the plaintiff can not recover in
this case for such injury, although the jury may believe
that it resulted from the negligence of the defendant or
some of its employes, unless the evidence has reasonably
satisfied the jury that, before the injury occurred, the
defendant's employes, or some one of them, connected
with the running of its switch engine, was conscious of
the fact that doing or omitting the thing which resulted
in the injury would probably result in some injury to a
person or property, and, with utter disregard of the re-
sult, consciously or intentionally did or omitted the
thing that caused the injury." (10.) "The court charges
the jury that although the defendant or its employes, or
some of them, may have been guilty of doing or omitting
to do, the acts, or some of the acts, defined as negligence
in the written charges given you, that would not justify
you in finding a verdict for the plaintiff because, by his
contributory negligence, Gaynor deprived himself and

[Gaynor, Admrx. v. Louisville & Nashville Railroad Co.]

his administratrix of the right to recover on account of such negligence on the part of the defendant." (11.) "The court charges the jury that if they believe from the evidence that some one or more of the defendant's employes, connected with the running of its switch engine, knew that some person or vehicle was on the defendant's track, or would probably be there, and carelessly and negligently, but not intentionally did, or omitted to do, some act the natural result of which was to cause said engine to run over or against such person or vehicle, you should find a verdict for the defendant, although you may further believe from the evidence that the doing or omitting of said act did result in the injury complained of." (12.) "Unless the jury believe from the evidence that one or more of defendant's employes connected with the running of its switch engine knew that some person or vehicle was on defendant's track, or would probably be there, and was conscious of the fact that they were doing or omitting, or about to do or omit, some act that would probably result in running over or against such person or vehicle, and intentionally did or omitted to do such act with utter indifference to the injury that they knew would probably follow, you ought to find a verdict for the defendant." (13.) "Before the plaintiff can recover in this case, she must reasonably satisfy you, by the evidence that some one or more of the defendant's employes connected with the running of its switch engine, knew that some person or vehicle was on the defendant's track, or would probably be there, and were conscious of the fact that they were doing or omitting or about to do or omit, some act that would probably result in running over or upon such person or vehicle, and intentionally did or omitted to do such act, with utter indifference to the injury that they knew would probably follow, and if you are not reasonably satisfied as to this you ought to find a verdict for the defendant." (14.) "The court charges the jury that the evidence in this case shows that Gaynor was guilty of negligence that proximately contributed to his own injuries, and that the plaintiff is not, therefore, entitled to a verdict in this

[Gaynor, Admrx. v. Louisville & Nashville Railroad Co.]

case on account of any mere negligence that one or more
of defendant's employes may have been guilty of, and
further that unless the evidence reasonably satisfies the
jury that some one or more of the defendant's employes
wantonly did or omitted some act that resulted in the
injury complained of, the jury ought to find a verdict
for the defendant."

There were verdict and judgment for the defendant.
The plaintiff appeals, and assigns as error the several
rulings of the trial court to which exceptions were re-
served.

The evidence adduced on the trial is set out *in ex-
tenso* in the bill of exceptions. In this court the appellee
moved the court to strike the bill of exceptions from the
record, upon the ground that it was prepared in viola-
tion of the rulings of the court "in that it contains many
repetitions and an enormous amount of immaterial mat-
ter, written in the form of questions and answers which
throw no light upon the assignments of error, but make
the proper treatment of the case impossible."

LESLIE B. SHELDON, R. INGE SMITH, and WILLIAM C.
GAYNOR, for appellant.—The court erred in giving to the
jury that portion of the general charge to which an ex-
ception was reserved.—Code of Ala., § 3326, and authori-
ties there cited; *L. & N. R. R. Co. v. Hurt*, 101 Ala. 34;
*White v. State*, 111 Ala. 92; *Gary et. al. v. Woodham*,
103 Ala. 422; *Postal Tel. Co. v. Brantley*, 107 Ala. 683;
*Taylor v. State*, 48 Ala. 157; *Ashworth v. State*, 63 Ala.
120; *Thompson v. State*, 47 Ala. 37; *David v. Malone*, 48
Ala. 428; *Marx v. Bell*, 48 Ala. 497.

The court below erred in giving the general affir-
mative charges requested by the defendant as to the
counts charging simple negligence. It was not shown
that the plaintiff was guilty of negligence which proxi-
mately contributed to his injury.—*M. & C. R. R. v. Wo-
mack, Admr.*, 84 Ala. 149; *K. C., M. & B. R. R. v. Crock-
er*, 95 Ala. 433; *Haley's case*, 113 Ala. 640; *L. & N. R.
R. Co. v. Webb*, 97 Ala. 308; *A. G. S. R. R. Co. v. Ander-
son*, 109 Ala. 304; *Meador's case*, 65 Ala. 137; *Frazier's
case*, 81 Ala. 185; 4 Am. & Eng. Ency. Law, 75 and note

2; *L. & N. R. R. Co. v. Schuster*, 7 S. W. R. 874; *S. & N. Ala. R. Co. v. Sullivan*, 59 Ala. 672; *L. & N. R. R. Co. v. Brown*, 15 So. Rep. 609; *Tanner's Exrs. v. R. R. Co.*, 60 Ala. 621; *R. R. Co. v. Webb*, 97 Ala. 308; *R. R. Co. v. Hurt*, 101 Ala. 34; *R. R. Co. v. Burgess*, 116 Ala. 11; *Bromly v. R. & M. R. R. Co.*, 95 Ala. 397; *Payne v. Mathias*, 92 Ala. 585.

The rulings of the court upon the charges relating to wantonness were erroneous.—*Glass v. M. & C. R. Co.*, 94 Ala. 588.

The court below erred in refusing to give charge numbered 16, which was requested by plaintiff.—*Sullivan's case*, 59 Ala. 282; *Southern Pacific R. R. Co. v. Shields*, 87 Ala. 610; *L. & N. R. R. Co. v. Shearer, Admr.*, 58 Ala. 672; 2 Sher. & Red. on Neg., 277, § 471.

The court below erred in refusing to give charge numbered 17, which was requested by plaintiff.

GREGORY L. & H. T. SMITH, *contra.*—A person who enters upon a railroad track without both looking and listening, or who after being upon the track remains without keeping a watch-out, is guilty of contributory negligence.—*Central R. R. Co. of Ga. v. Forshee*, 27 So. Rep. 1006; *Memphis & Charleston R. R. Co. v. Martin*, 117 Ala. 280-281; *Georgia & Pacific R. R. Co. v. Lee*, 92 Ala. 262.

Where a lookout is stationed in front of a train, near a crossing, and he, upon seeing a person enter upon the track, at once hallooes to him and signals the train to stop, and the train obeys the signals promptly, there can be no wantonness.—*Burke v. Alabama Midland R. R. Co.* 124 Ala. 605.

To submit the question of wantonness to the jury, there must be evidence showing that the person charged with wantonness knew of the probable danger, and with reckless indifference to the consequences committed the act, or omitted to perform a duty, resulting in damages. *Alabama Great Southern R. R. Co. v. Hall*, 105 Ala. 606; *Ga. Pacific R. R. Co. v. Lee*, 92 Ala. 262.

In order to predicate wantonness upon the running of

a train over a crossing, the train must be run at a rapid rate of speed.—*L. & N. R. R. Co. v. Webb,* 97 Ala. 306; *Ensley R. R. Co. v. Chewning,* 93 Ala. 29; *Ga. Pac. R. R. Co. v. Lee,* 92 Ala. 271; *Haley v. K. C., M. & B. Ry. Co.,* 113 Ala. 651.

If the engineer sees a person approaching a track, he has a right to assume that such person will stop before entering upon it.—*Burson v. L. & N. R. R. Co.,* 116 Ala. 198.

Or if a person is seen upon the track, the engineer has a right to presume that he will leave before the train approaches.—*So. Ry. Co. v. Bush,* 102 Ala. 482.

Where either party is entitled to the general charge under one issue in the case, any other ruling upon any other particular issue is immaterial.—*Glass v. Meyers Sons & Co.,* 124 Ala. 332.

Where either party is entitled to the general charge, errors in giving or refusing other charges are immaterial.—*Adler v. Prestwood,* 122 Ala. 367.

The same rule is applicable to erroneous rulings upon evidence.—*Alabama Mineral Land Co. v. Baker,* 119 Ala. 351; *Prichard v. Sweeney,* 109 Ala. 659; *Shorter v. So. Ry. Co.,* 121 Ala. 159.

A plea of contributory negligence need not contain much more than the conclusions of the pleader.—*Ga. Pa. R. R. Co. v. Davis,* 92 Ala. 306; *Mary Lee C. & R. Co. v. Chambliss,* 97 Ala. 174; *Crenshaw v. M. & M. Ry. Co.,* 65 Ala. 569; *Klosky v. Ensley,* 103 Ala. 100; *Oxford L. L. Co. v. Steadham,* 101 Ala. 376.

McCLELLAN, C. J.—Section 3326 of the Code is as follows: "The court may state to the jury the law of the case, and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties." In this case the court violated this statute by charging upon the effect of the testimony without being required to do so by either of the parties. The charge in question given *ex mero motu* was as follows: "After listening to the arguments yesterday, gentlemen, by counsel for

17c

plaintiff and for the defendant, and after carefully reading over the charges which have been asked for by both sides, I have come to the conclusion that in this case the plaintiff was guilty of contributory negligence as matter of law, and I would charge you that under the counts of the complaint which claim damages for simple negligence, that for the failure to perform its duty, the plaintiff cannot recover because he himself was guilty of contributory negligence. The evidence in this case shows the manner in which he approached this railroad track, it shows the location of this train that injured him. There is no evidence showing that he did look or listen. The law requires that a person should do both, for the simple reason there may be times when he cannot hear on account of other noises, but he may be able to see. And the evidence shows conclusively in this case that there was no obstruction in the way to prevent his seeing the approach of this train that ran over him. It is true there was a moving freight train, and he was near that; he may not have been able to hear the ringing of the bell when it was rung, but there is nothing in the evidence to show—in fact the evidence shows conclusively that there was no obstruction in the way to prevent his seeing the approach of that train if he had looked. It may be said there is no evidence that he didn't look, but if he looked and saw it, and then didn't get out of the way, that was such contributory negligence, as would disentitle him to recover under these counts. So I say that I have come to the conclusion and will charge you that the plaintiff in this case cannot recover under the counts which charge simple negligence on account of his own acts in putting himself where he was injured without taking the precaution that the law requires. In other words, that he was guilty of contributory negligence and cannot recover under those counts." The giving of this charge unrequested on the effect of the testimony was error. From this error a presumption of injury arises. This presumption is not rebutted by the fact that at the request of the defendant the court subsequently gave the affirmative charge *with hypothesis*

against those counts of the complaint which claimed damages for simple negligence. The charge given *ex mero motu* was not on the hypothesis of the jury's believing the evidence at all, but it was an absolute instruction to find for the defendant on certain counts. The evidence was oral. Its credibility had to be submitted to the jury. Even had the court given this charge at the request of the defendant, it would still have been erroneous for not submitting the truth of the testimony to the jury. Given in the terms it was, it absolutely required a finding for defendant though the jury might not have believed the testimony as to the intestate's contributory negligence. The judgment must, therefore, be reversed for this error committed by the court, even though it be assumed that the testimony *if believed by the jury* showed without conflict that the intestate was guilty of negligence which proximately contributed to his death. Any other ruling would emasculate the statute.—*Mayer v. Thompson-Hutchison Building Co.,* 116 Ala. 634; *Gafford v. State,* 125 Ala. 1; *Cary v. Woodham,* 103 Ala. 421; *Postal Telegraph Co. v. Brantley,* 107 Ala. 683; *Crawford v. McLeod,* 64 Ala. 240; *Baker v. Russell,* 41 Ala. 279; *Moore v. Robinson,* 62 Ala. 537.

We find no error in the rulings of the court on charges requested bearing on contributory negligence. Assuming the truth of the testimony, it showed that the intestate was guilty of negligence in going on the track where he was run over without looking and listening for the approaching cars, that the employes of the defendant did not become aware of his peril in time to avoid injuring him, and were not guilty of negligence in not acquainting themselves with his position sooner, and that, therefore, his own negligence was the proximate contributing cause of the injury he suffered. If the jury believed the evidence, it necessarily follows, that their duty was to find for defendant under the counts of the complaint which charged negligence only against it.

As to the counts which charged wantonness on the part of defendant's employes it need only be said that if there was any testimony tending to support them—which we do not decide—it was that of one or two wit-

nesses who testified to the rapid movement of the train over the street at the crossing. There was much other testimony to the effect that the speed of the train over the crossing was at the rate of about four miles an hour. It seems clear to us that if the fact was in line with this testimony there was no room for the jury to find that defendants' servants were guilty of wantonness, reckless indifference to probable or even possible disastrous consequences in the operation of the engine and cars over the street at the time of the infliction of the injuries upon plaintiff's intestate. This was the position taken by the trial court in passing upon charges requested.

A great many exceptions were reserved on the trial to rulings on the admissibility of testimony. It is, we think, not necessary to discuss or pass on these rulings in detail, since with all the testimony offered by plaintiff and rejected allowed to go to the jury and all the testimony admitted against plaintiff's objections excluded, it would still be proper for the court to give the affirmative charge with hypothesis against those counts of the complaint which claim damages for negligence on the part of defendant, and also to give the same charges that were given with reference to the counts which claim for wantonness, and the case before the jury would not be materially different in any respect from what it is as presented in this record. But apart from this consideration, we find no error, certainly none prejudicial to the appellant in the rulings on the competency of testimony.

There was no error in the rulings of the court on demurrers to the pleas.

Motion is made in this case to strike the bill of exceptions because it was not prepared in accordance with Rule 33, p. 1201 of the Code. In the preparation of this bill the rule has been violated under the same circumstances and in the same way as in the case of *Woodward Iron Co. v. Herndon*, 130 Ala. 364, 30 So. Rep. 370, and upon the considerations there adverted to we adopt the course here that was adopted in that case: We decline

to strike the bill of exceptions, but we impose its costs on the appellant.

Reversed and remanded; costs of bill of exceptions to be adjudged against appellant.